UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERIC J. PORTER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:24-cv-12878-IT |
| | * | |
| KEVIN F. ARSENAULT, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 22, 2026

TALWANI, D.J.

This litigation arises out of Plaintiff Eric J. Porter's partnership and joint venture with Defendant Kevin F. Arsenault, in which the parties purchased a four-family apartment building in Allston, Massachusetts (the "Property"), which they later sold in 2021. Pending before the court is Porter's Motion for Leave to File [Second] Amended Complaint [Doc. No. 67]. For the reasons explained below, the Motion [Doc. No. 67] is DENIED.

## I. Procedural Background

Porter, proceeding *pro se*, initially filed this action in Massachusetts Superior Court. Notice of Removal, Ex. A [Doc. No. 1-1] (Complaint for Damages). After the case was removed to the United States District Court for the District of Massachusetts on the basis of the parties' diversity of citizenship pursuant to 28 U.S.C. § 1332(a), Notice of Removal 2 [Doc. No. 1], the court rejected Porter's repeated challenges to this court's subject matter jurisdiction. See Jan. 10, 2025 Mem. & Order [Doc. No. 30]; Jan. 24, 2025 Mem. & Order [Doc. No. 36]; Mar. 11, 2025 Elec. Order [Doc. No. 48].

Porter's Amended Complaint [Doc. No. 9] asserted claims against Kevin and Diana Arsenault and the Arsenault Family Revocable Living Trust (the "Trust"). On August 12, 2025,

this court granted Defendants' Motion to Dismiss [Doc. No. 37], dismissing Porter's Chapter 93A claim against the Arsenaults with prejudice. See Aug. 12, 2025 Mem. & Order 4–5, 8 [Doc. No. 53]. The court also found that the Trust, a traditional—rather than business—trust, could not be sued as a legal entity, and therefore dismissed all claims against the Trust with prejudice. Id. at 5–6, 8. Finally, the court dismissed all claims against Diana Arsenault and the remainder of the Amended Complaint [Doc. No. 9] without prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). Aug. 12, 2025 Mem. & Order 7–8 [Doc. No. 53]. Where certain claims were dismissed without prejudice, the court set a deadline for the filing of a motion for leave to amend, and specified that "any motion seeking to further amend the complaint" must include a proposed amended complaint that "clearly and expressly states each separate cause of action [Porter] intends to bring, against which Defendant, and the factual basis for each claim." Id. at 8.

After Porter filed a [Proposed Second] Amended Complaint [Doc. No. 65] and Motion for Leave to File [Second] Amended Complaint [Doc. No. 67] and Defendants filed their Opposition [Doc. No. 68], Porter sought leave to file a reply, in part to address purported misrepresentations by the Defendants, see Mot. for Leave to File Reply [Doc. No. 71]. The court denied leave to file a reply and explained that it would "decide the pending Motion for Leave to File [Second] Amended Complaint [Doc. No. 67] based on whether the allegations in the [Proposed Second] Amended Complaint [Doc. No. 65] 'clearly and expressly state each separate cause of action [Porter] intends to bring, against which Defendant, and the factual basis for each claim.'" Nov. 25, 2025 Elec. Order [Doc. No. 72] (quoting Aug. 12, 2025 Mem. & Order 8 [Doc. No. 53]).

## II. Factual Background

The court provided a full accounting of the facts alleged in the Amended Complaint [Doc. No. 9] in its August 12, 2025 Memorandum and Order [Doc. No. 53]. The few additional

facts alleged in the [Proposed Second] Amended Complaint [Doc. No. 65] relevant to the motion to amend are discussed below.

## III. Standard of Review

Under Federal Rule of Civil Procedure 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. Fed. R. Civ. P. 15(a). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

However, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" Foman v. Davis, 371 U.S. 178, 182 (1962). The court does not have to "mindlessly grant every request for leave to amend. When a proffered amendment . . . would be an exercise in futility, or otherwise would serve no useful purpose, the district court need not allow it." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). The court must review a proposed amended complaint for futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

## IV. Discussion

Porter filed his Motion for Leave to File [Second] Amended Complaint [Doc. No. 67] within the deadline established by the court. See Oct. 16, 2025 Elec. Order [Doc. No. 66]. Accordingly, the court finds no "undue delay, bad faith or dilatory motive on the part of

[Porter].” Foman, 371 U.S. at 182. The court considers only whether the proposed pleading would be futile. See Glassman, 90 F.3d at 623.

*A. Reconsideration*[1]

As a threshold matter, the court dismissed Porter’s Massachusetts statutory claims with prejudice. See Aug. 12, 2025 Mem. & Order 4–5, 8 [Doc. No. 53]. Porter nonetheless asks the court to reconsider his Mass. Gen. Laws ch. 93A, § 11 claim against the Trust, arguing that the Trust is commercial because it “managed a 50% interest in 604 Cambridge Street, a rental property generating income[.]” Proposed Second Am. Compl. ¶ 11(a) [Doc. No. 65] (citing Begelfer v. Najarian, 381 Mass. 177, 409 N.E.2d 167 (1980)).

As explained previously, the Trust is a traditional trust and does not exist as a “distinct legal entity.” Jan. 24, 2025 Mem. and Order 2–4 [Doc. No. 36] (citing BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 697 (1st Cir. 2023)). Therefore, regardless of the commercial nature of the property it owned, Porter may not sue the Trust. See Aug. 12, 2025 Mem. & Order 5–6, 8 [Doc. No. 53].

A Chapter 93A claim is also unavailable against Kevin Arsenault because he and Porter allegedly purchased the 604 Cambridge Street as partners in a joint venture and, as such, they “are precluded from asserting Chapter 93A claims against one another.” Aug. 12, 2025 Mem. & Order 4 [Doc. No. 53] (quoting Smith & Croyle, LLC v. Ridgewood Power Corp., 111 F. Supp. 2d 77, 84 (D. Mass. 2000)). The proposed pleading includes additional descriptors of the commercial nature of the joint venture. See Proposed Second Am. Compl. ¶ 12 [Doc. No. 65]

[1] To the extent that Porter attempts to use the motion for leave to amend as an opportunity to seek reconsideration of the court’s prior decisions on subject matter jurisdiction, the court finds no procedural or substantive basis for reconsideration of its prior rulings as to its diversity jurisdiction.

("[Porter] and Kevin Arsenault purchased [the Property] as 50/50 co-owners, operating it as a profitable rental property."). But these additional details do nothing to reduce the parties' status as partners in a joint venture. And the proposed pleading offers no basis for a Chapter 93A claim against Diana Arsenault.

In sum, taken in the light most favorable to Porter, the court finds no facts in the [Proposed Second] Amended Complaint [Doc. No. 65] that suggest either that the Trust is a business trust or that Porter and Kevin Arsenault lacked intent to enter a joint venture regarding the Property as a rental business. The court therefore declines to reconsider its previous dismissal with prejudice of Porter's Chapter 93A claims against the Trust and Kevin and Diana Arsenault. See Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (explaining that, although a pleading filed *pro se* should be construed "liberally," dismissal is appropriate "when the complaint fails to even suggest an actionable claim.").

*B. Breach of Fiduciary Duty*

Porter argues that Kevin and Diana Arsenault both owed him a fiduciary duty to conduct Property-related business in good faith and that they failed to do so by (1) concealing the Trust's creation; (2) using Trust rental income for Kevin Arsenault's personal needs; (3) converting a home equity line of credit ("HELOC") into a Trust obligation and forcing a second mortgage; (4) refusing Plaintiff's higher offer; and (5) misusing sale proceeds for personal debts. See Proposed Second Am. Compl. ¶¶ 31–32 [Doc. No. 65].

Under Massachusetts law, to claim a breach of fiduciary duty, a plaintiff needs to demonstrate (1) a fiduciary duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury to the plaintiff proximately caused by the defendant's breach thereof. See Estate of Moulton v. Puopolo, 467 Mass. 478, 492, 5 N.E.3d 908, 921 (2014); Baker v. Wilmer Cutler

Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842, 81 N.E.3d 782, 789 (2017). "[T]he standard of duty owed by partners to one another [i]s the utmost good faith and loyalty." Wartski v. Bedford, 926 F.2d 11, 13 (1st Cir. 1991) (internal quotations and citations omitted).

As to the first element, Porter alleges that the Arsenaults owed him a fiduciary duty as co-owners and trustees. Proposed Second Am. Compl. ¶ 31 [Doc. No. 65].[2] With respect to the third element, Porter alleges that he suffered financial losses, specifically costs associated with a second mortgage and selling the Property at a loss. Proposed Second Am. Compl. ¶ 32 [Doc. No. 65]. But, as described below, Porter has failed to allege any conduct that satisfies the second element, the breach of fiduciary duty.

1. Concealment of the Trust's Creation

First, Porter alleges that in April 2018, Kevin Arsenault transferred his 50% interest to the Trust without notifying Porter or asking for consent. See Proposed Second Am. Compl. ¶¶ 17, 31(a) [Doc. No. 65]. Porter argues that this transfer both breached Kevin Arsenault's fiduciary duty to Porter and violated Massachusetts and Florida law. See id. ¶ 31(a) (citing Mass. Gen. Laws ch. 108A, § 20 and Fla. Stat. § 736.0813).

Porter has not alleged that the transfer of Kevin Arsenault's ownership interest to the Trust affected Porter's ownership interest or their joint venture in any way. Porter's failure to allege how the Trust establishment affected his and Arsenault's joint venture renders Porter's Massachusetts statutory claim meritless. See Mass. Gen. Laws ch. 108A, § 20 ("Partners shall render on demand true and full information of all things affecting the partnership to any partner[.]") (emphasis added). Further, Porter claims the violation of a Florida law expressly

[2] Defendants do not deny that Kevin Arsenault owed Porter a fiduciary duty as a business partner and co-owner of the Property. See Defs.' Opp'n 6 [Doc. No. 68]. Defendants take no position as to whether Diana Arsenuakt owed a fiduciary duty to Porter.

protecting trust beneficiaries. See Fla. Stat. § 736.0813 ("The trustee shall keep the qualified beneficiaries of the trust reasonably informed of the trust and its administration."). While Porter co-owns property held by the Arsenault Family Revocable Living Trust, he is not a beneficiary of the Trust. See Fla. Stat. § 736.0103 (Under Florida law, a beneficiary is "a person who has a present or future beneficial interest in a trust, vested or contingent, or who holds a power of appointment over trust property in a capacity other than that of trustee."). Accordingly, the Arsenaults' "concealment" of Kevin's transferred Property interest is not a breach of fiduciary duty because that contested act did not affect the joint partnership.

2. Use of Trust Rental Income

Porter alleges that Kevin Arsenault "used trust rental income to pay monthly HELOC fees, refusing to pay off this loan personally despite 401(k) funds, as advised by [his] accountant[.]" Proposed Second Am. Compl. ¶ 18 [Doc. No. 65]. However, Porter again fails to identify how Kevin Arsenault's decision to use one source of income as opposed to another to pay off the home equity loan affected the joint partnership or Porter's interest in the Property. Porter alleges that Kevin Arsenault's conduct violated Florida trust law. See id. ¶ 31(b) (citing Fla. Stat. § 736.0810). But the statute cited by Porter merely sets out a trustee's duties regarding the maintenance of trust records and the proper identification of trust property. Fla. Stat. § 736.0810. Porter does not explain how Kevin Arsenault's use of Property rental income violates Florida trust law, and, given that Porter is not a beneficiary of the Trust, he lacks standing to allege such a violation. Weaver v. Wood, 425 Mass. 270, 275, 680 N.E.2d 918, 922 (1997), cert. denied, 522 U.S. 1049 (1998) ("In the case of a private trust, only a named beneficiary, or one suing on his or her behalf, can maintain an action to enforce a trust.").

3. Converting the HELOC to a Trust Obligation

Porter alleges that in November 2019, the Arsenaults, as co-trustees, converted the home equity loan to a Trust obligation, thereby "forcing a second mortgage," in violation of Florida trust law. Proposed Second Am. Compl. ¶¶ 20, 31(c) [Doc. No. 65]. The Florida law cited by Porter requires that "[a] trustee shall administer the trust as a prudent person would[.]" Fla. Stat. § 736.0804. Again, as a non-beneficiary, Porter lacks standing to assert claims regarding improper trust administration. See T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570, 924 N.E.2d 696, 704 (2010) (holding that the lessor of land from trust lacked standing to claim that trustee's decision to terminate trust violated its terms). Regardless, Porter has not identified how converting the home equity loan to a Trust obligation affected the joint partnership such that Kevin breached his fiduciary duty.

4. Refusal of Porter's 2021 Purchase Offer

Porter alleges that throughout 2018–2021, "Kevin silently refused to sell the [P]roperty to [Porter], citing the need for the 'highest price,' despite [Porter's] offers[.]" See Proposed Second Am. Compl. ¶ 21 [Doc. No. 65]. Porter also asserts that he offered to match other buyers' offers on at least two occasions in 2021. See Proposed Second Am. Compl., Ex. 3, at ECF 1 [Doc. No. 65-3]; Proposed Second Am. Compl., Ex. 5, at ECF 3 [Doc. No. 65-5]. Porter asserts that Kevin Arsenault's refusal to sell the Property to Porter constitutes a breach of good faith. See Proposed Second Am. Compl. ¶ 31(d) [Doc. No. 65].

"It is well settled that partners owe each other a fiduciary duty of 'the utmost good faith and loyalty.'" Wartski, 926 F.3d at 13 (quoting Meehan v. Shaughnessy, 404 Mass. 419, 535 N.E.2d 1255, 1263 (1989)). "As a fiduciary, a partner must consider his or her partners' welfare, and refrain from acting for purely private gain." Id. at 13–14. Porter has not plausibly alleged

that Kevin Arsenault ever rejected a firm offer[3] presented by Porter to purchase the Property, much less that Arsenault failed to consider Porter's welfare or that Arsenault's conduct was solely for his own private gain. See Wartski, 926 F.3d at 13–14. Arsenault's preference to sell to a third party did not purely enrich Arsenault, where Porter and Arsenault evenly split the sale profits between themselves. See Proposed Second Am. Compl. ¶ 12 [Doc. No. 65]; cf. Wang v. Liu 584 B.R. 427, 437–38 (D. Mass. 2018) (finding that a plaintiff properly alleged breach of fiduciary duty claim where shareholders of closely held corporation alleged to have embezzled funds); Butler v. Moore, No. 10-10207-FDS, 2015 WL 1409676, at *85–86 (D. Mass. March 26, 2015) (holding that diversion of business and financing opportunity away from closely held corporation by members for themselves breached fiduciary duty).

5. Misuse of Sale Proceeds

Porter alleges that after the Property sold for $2.25 million in August 2021, Kevin Arsenault admitted via email to using sale proceeds for personal debts in violation of Florida trust law. See Proposed Second Am. Compl. ¶¶ 26, 31(e) [Doc. No. 65] (citing Fla. Stat. § 736.0802). Florida law requires a trustee to "administer the trust solely in the interests of the beneficiaries," and sets out various other requirements to ensure that a trustee acts in accordance with a duty of loyalty toward the trust beneficiary. Fla. Stat. § 736.0802. Again, Porter, as a non-beneficiary of the Trust, has no standing to bring claims regarding trust misadministration and Porter has not alleged with specificity how Kevin Arsenault's application of the Property's sale

[3] Neither Porter's references to Kevin Arsenault's "silent[] refus[al]" to sell, nor Porter's emails to Kevin Arseanult referencing the potential for a competing offer amount to a plausible allegation that Kevin Arsenault rejected a firm offer presented by Porter to purchase the Property. See Proposed Second Am. Compl. ¶ 21 [Doc. No. 65]; Proposed Second Am. Compl., Ex. 3, at ECF 1 [Doc. No. 65-3]; Proposed Second Am. Compl., Ex. 5, at ECF 3 [Doc. No. 65-5].

proceeds affected their joint venture. See Ressler v. Deutsche Bank Tr. Co. Ams., 92 Mass. App. Ct. 502, 507, 88 N.E.3d 295, 300 (2017).

In sum, none of Porter's allegations arise to the level of breach of the Arsenaults' fiduciary duty as co-Property owners, and Porter has therefore failed to state a claim for breach of fiduciary duty. See Estate of Moulton, 467 Mass. at 492, 5 N.E.3d at 921.

*C. Fraud*

Porter claims that the Arsenaults "misrepresented their intent to secure the 'highest price,' knowing they would never sell to [Porter,] . . . inducing reliance[.]" Proposed Second Am. Compl. ¶ 33 [Doc. No. 65] (citing Masingill v. EMC Corp., 449 Mass. 532, 870 N.E.2d 81 (2007)). Porter states that he relied on the Arsenaults' misrepresentation and incurred the cost of a second mortgage and a lower sale price. Id. at ¶ 34.

Under Massachusetts law, in order to recover for alleged intentional fraudulent conduct, a plaintiff must allege that "(i) the defendants made a false representation of a material fact with knowledge of its falsity for the purpose of inducing him to act thereon, (ii) he relied upon the representation as true and acted upon it to his detriment, and (iii) that his reliance was reasonable under the circumstances." Rodi v. S. New England Sch. of L., 532 F.3d 11, 15 (1st Cir. 2008) cert. denied, 555 U.S. 1175 (2009); see Masingill, 449 Mass. at 540, 870 N.E.2d at 88 (citing Kilroy v. Barron, 326 Mass. 464, 465, 95 N.E.2d 190, 191 (1950)).

The only allegation relevant to this claim is that "Kevin silently refused to sell the [P]roperty to [Porter], citing the need for the 'highest price,' despite [Porter's] offers[.]" Proposed Second Am. Compl. ¶ 21 [Doc. No. 65] (citing Exhibits 3 and 5). The court is unable to identify a false representation of material fact Kevin Arsenault allegedly made with knowledge of its falsity anywhere in the proposed pleading. See Masingill, 449 Mass. at 540,

870 N.E.2d at 88. First, Porter does not identify a specific misrepresentation made by Kevin Arsenault, only a general reference to "the need for the 'highest price,'" and none of Porter's supporting exhibits provide anything more detailed. Proposed Second Am. Compl. ¶ 21 [Doc. No. 65]. Second, Porter has not alleged that Kevin Arsenault knew that his references to needing to sell for the "highest price," were false and made with the intent to induce Porter into any action. See Rodi, 532 F.3d at 15. Third, Porter has not alleged with specificity that he relied on Kevin Arsenault's statements in taking any action.[4] See id. Because Porter has not explained how he relied on a fraudulent statement, the court cannot determine whether such reliance would be reasonable under the circumstances. See id. Accordingly, Porter has not alleged with specificity any of the elements required to comprise a claim for fraudulent misrepresentation. See id.

*D. IIED*

Porter claims that Kevin Arsenault intentionally inflicted emotional distress on him during a May 4, 2021 phone call. See Proposed Second Am. Compl. ¶¶ 37–38 [Doc. No. 65].

To state a claim for IIED in Massachusetts, a plaintiff must show that a defendant "knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379, 385, 10 N.E.3d 1122, 1138 (2014); see Agis v. Howard Johnson Co., 371 Mass. 140, 144–45, 355 N.E.2d 315, 318 (1976). Conduct described as "mere insults, indignities, threats, annoyances, petty oppressions, or other

[4] If anything, Porter's arguments demonstrate the contradictory nature of his claims. He cannot allege, on the one hand, that Kevin Arsenault breached his fiduciary duty by refusing to accept Porter's purchase offers, and on the other hand, that Porter relied on Arsenault's misrepresentation regarding his intention to sell the Property only for the highest price such that Porter declined to offer to purchase the Property.

trivialities" is not extreme and outrageous. Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72, 82 (1987) (quoting Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965)). Additionally, it is not enough that a defendant acts with tortious or even criminal intent nor that a defendant intends to inflict emotional distress. Id. Liability only attaches when conduct goes "beyond all bounds of decency and utterly intolerable in a civilized community." Sena v. Commonwealth, 417 Mass. 250, 264, 629 N.E.2d 986, 994 (1994) (quotation modified).

Porter alleges that Kevin Arsenault told Porter during a phone call that he would "never f***ing sell" to Porter and called Porter a "snake." Proposed Second Am. Compl. ¶ 25 [Doc. No. 65]. Porter also points to an email exchange discussing the sale of the Property to Porter where Kevin Arsenault accused Porter of "bad behavior" and "conspiring with realtors" and told Plaintiff that Defendant and his family members have "been on to [Porter's] intentions for years." Id.; see Proposed Second Am. Compl., Ex. 3 [Doc. No. 65-3]. Viewed in the light most favorable to Porter, Kevin Arsenault's conduct does not rise to the level of "extreme and outrageous" as a matter of law. Polay, 468 Mass. at 385, 10 N.E.3d at 1128. Instead, Arsenault's alleged statements are more appropriately characterized as "insults," "annoyances," and "indignities." Foley, 400 Mass. at 99, 508 N.E.2d at 82 (citation omitted); see Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965) (calling a telephone operator "God damned woman" and "God damned liar" and threatening to "break her God damned neck" is not extreme and outrageous conduct even though insulting); Roman v. Tufts Coll., 461 Mass. 707, 718, 964 N.E.2d 331, 341 (2012) (holding that defendants' actions of "cruelty" and "malpractice," like "cursing, and an order to shut up, as well as eye rolling," are trivialities that fail to go beyond bounds of decency) (citation modified)). Accordingly, Porter's proposed pleading fails to state a

claim for intentional infliction of emotional distress. See Polay, 468 Mass. at 385, 10 N.E.3d at 1128.

*E. Mismanagement of Trust Funds and RICO Claim*

Porter also alleges a federal Racketeer Influenced and Corrupt Organizations ("RICO") statutory claim pursuant to 18 U.S.C. § 1962(c), asserting that the Arsenaults "conducted an enterprise . . . through a pattern of activity . . . to self[-]deal benefits to himself [sic] and harm Plaintiff and beneficiaries." Proposed Second Am. Compl. ¶ 39 [Doc. No. 65].

RICO provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of" the statute. 18 U.S.C. § 1964(c); see Med. Marijuana, Inc. v. Horn, 604 U.S. 593, at 600–01 (2025). The statute further provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . , to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering[.]" 18 U.S.C. § 1962(c). "[A] pattern of racketeering activity requires at least two predicate acts of racketeering activity." Lincoln House, Inc. v. Dupre, 903 F.2d 845, 846 (1st Cir. 1990). "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include a variety of predicate offenses, including, among other things, violations of the mail-fraud statute, 18 U.S.C. § 1341, and the wire-fraud statute, 18 U.S.C. § 1343.

In his proposed pleading, Porter alleges that the Arsenaults established the Trust through fraudulent activity like "wire fraud via emails/banking, misrepresenting sale intent" in violation of the wire fraud statute, 18 U.S.C. § 1343, and the "theft of trust funds" in violation of Florida law. Proposed Second Am. Compl. ¶ 39 [Doc. No. 65]. As to specifics, Porter alleges that "[a]cts include concealment (2018–2025), fund misuse for personal benefits (2018–2021), and fraudulent sale (2021)." Id. at ¶ 40.

Nothing in the proposed pleading amounts to "racketeering activity." 18 U.S.C. §§ 1961(1); 1962(c). Even construed most favorably to Porter, the Arsenaults' "concealment" either that they never wanted to sell the Property to Porter or that they established the Trust is not a predicate act, as defined by 18 U.S.C. § 1961(1), even if such "concealment" was conducted over email or the telephone. Mail and wire fraud requires proof that (1) defendants knowingly devised or participated in a scheme to defraud, (2) to obtain money or property by means of false or fraudulent pretenses, representations and promises, and (3) that the mail or interstate wire facilities were used in carrying out the scheme. Neder v. United States, 527 U.S. 1, 20 (1999). Porter has failed to allege with specificity any of these necessary elements. Similarly, Porter has not indicated how the Arsenaults' use of their share of the Property's rents and sale proceeds amount to theft of Trust funds, much less that such use constitutes mail or wire fraud. See 18 U.S.C. § 1961(1). Therefore, in the absence of "viable predicate acts," Porter has failed to state a civil RICO claim upon which relief can be granted. In re Lupron Mktg. & Sales Pracs. Litig., 295 F. Supp. 2d 148, 165 (D. Mass. 2003).

## V. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to File [Second] Amended Complaint [Doc. No. 67] is DENIED as futile, pursuant to Federal Rule of Civil Procedure 15(a)(2).

IT IS SO ORDERED.

September 22, 2026

/s/ Indira Talwani
United States District Judge